UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CONNIE MARSHALL                                                                                                    PLAINTIFF

v.                                                                                                    CIVIL ACTION NO. 3:05CV-261-S

BRETT JOHNSON, SUPERVISOR, FBI *et al.*                                                  DEFENDANTS

**MEMORANDUM OPINION**

The plaintiff, Connie Marshall, filed a *pro se* complaint asserting various federal claims (DN 1). She also filed an application to proceed without prepayment of fees, which was granted by Order entered May 10, 2005 (DN 8). Because the plaintiff is proceeding *in forma pauperis*, the Court must *sua sponte* screen the complaint pursuant to 28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons that follow, the instant action will be dismissed.

**I. BACKGROUND AND SUMMARY OF CLAIMS**

As grounds for filing this case in federal court, the plaintiff lists the following: "Amendment XIV," 18 U.S.C. § 245, FCC Rules, false claims, Illegal Wire Tap since July 2004 "commiting severe Tele Communication Harassment," federal waste of taxpayers' money, "Conspiracy To Intimidate [and] Harass a witness/victim of a Hate Crime," a violation of "Policies [and] Procedures of FBI Rules of Fed. Procedure," and violation of Title VII and Title 18. To this end, she sues the FBI Office in Louisville and sues the following three defendants in their individual and official capacities: Brett Johnson, Supervisor of the FBI in Louisville; Mr. Hicks, an employee of the FBI in Louisville; and Steven Gurley, an employee of the FBI in

Louisville. She seeks damages and injunctive relief, including an end to the illegal wiretap, investigation into the alleged hate crimes, and termination and incarceration of the defendants for "willfully Participating In corrupt activities [and] violating Federal Law."

In the statement of claim portion of the form complaint, the plaintiff alleges that "[a]fter discovering on a tape that her co-workers were discussing killing her [and] taking her to Bardstown For a Bonfire with The KKK (Ku Klux Klan) [and] reporting this to [Defendant] Mr. Hicks," she received no assistance from the FBI. One month later, claims the plaintiff, she was assaulted on three separate occasions "By Having A substance thrown on her which Itched, Burned [and] caused Her Hair To Fall out, also distorted Her Features [and] still causes her medical Problems." She claims that she again received no assistance from the FBI. She reports also having had bugs thrown in her hair but receiving no assistance from the FBI. Finally, she alleges, "A False claim has been made [and] the FBI Has Placed an Illegal Wire Tap on Ms Marshalls Tele."

To the complaint, the plaintiff attaches a letter that she reports sending to Cynthia Alford of the U.S. Department of Justice, Civil Rights Division, in Washington, D.C. The letter provides greater detail of the events about which she complains. She reports that upon beginning a new job at Blue Grass Automotive's Lincoln Mercury Dealership in October 2003,[1] "it was clear that they did not want [her] working there." Because of problems, she filed an in-house complaint, but received no assistance from the CEO. She then reports that on April 26, 2004,

> I had my tape player sitting on my hard drive under my desk at work listening to my Tina Turner tapes, as I am a Tina Turner Impersonator and was listening to the tapes to prepare for a Derby show, in which I was to perform on the Friday

---

[1]The plaintiff actually indicates that she began her new job in October 2004, but given the chronology of events, it appears that she meant 2003.

> before the Derby. When I went to lunch, I pushed the wrong button and instead of turning the tape player off I inadvertently hit record. That evening when I arrived home I begin playing my Tina Turner tapes and on one of my tapes I could hear people talking about killing me (however the tape was not clear).

She reports taking the tape to have a copy made and enhanced. From the copy, claims the plaintiff, "I could hear what was being said about taking me to the KKK and killing me and a list that I have been placed on." She gave a copy of the tape to the CEO of Blue Grass Automotive, but nothing was done.

The next incident occurred on May 21, 2004, when while sitting at her desk working, a substance was thrown on her twice. The substance made her skin itch and burn and hair fall out. Then on May 24, 2004, bugs were thrown in her hair, and on May 26, 2004, the unknown substance was thrown on her again. Initially, she was unable to get the St. Matthews Police Department to take a report, but the police department finally took a report in July 2004. The Louisville Metro Police also took reports on unspecified dates.

On June 1, 2004, the plaintiff was placed on leave without pay and then terminated on July 14, 2004. She then reports filing complaints with the Louisville EEOC "that were covered up" and filing a federal complaint against the EEOC, Case No. 3:04CV-612-S. She advises that she filed another EEOC charge and recently received a letter from the EEOC advising "that they were not going to investigate the case."

The plaintiff next reports that as a result of the above-referenced assaults, she filed a criminal complaint against Tyler Stone, the person that threw the substance on her. She reports that she alleged "assault" but claims that the charge was "changed to harassment/no physical contact."

3

With respect to the allegations against the FBI and its employees, the plaintiff reports that in May or June 2004, she spoke with Defendant Mr. Hicks "4-5 times when all of this first begin and the St. Matthews Police would not investigate." Mr. Hicks declined to investigate advising the plaintiff that she "needed to wait until the entire case [presumably, the state court criminal action] was over before the FBI would get involved." The plaintiff then spoke with "Mary Lou," presumably at the FBI office, who referred her to an investigator. Consequently, on October 27, 2004, the plaintiff met with Jeff Young and told him about the assault and related incidents. Jeff Young told the plaintiff that he believed her and assured her that the FBI would do an investigation, but advised her that he had to turn the information over the his supervisor, Defendant Brett Johnson, who would assign an investigator to the case.

The plaintiff telephoned Brett Johnson "numerous times and was 'put off.'" When she finally talked with him, he told her that he had to speak with "Hancy Jones at the Federal Attorney General's Office." The plaintiff claims, "I explained to him my doubts about the Federal Attorney's Office in Louisville Kentucky and asked him to get someone from Washington to come to Louisville because of the high degree of corruption and cover-up, and he assured me that he would if things did not work out with the Federal Attorney General's Office in Louisville, Kentucky." Sometime thereafter, the plaintiff received a voice mail message from Brett Johnson stating that "he spoke with Hancy Jones . . . and that he would get back with me." Then on January 3, 2005, the FBI mailed the plaintiff a letter advising her that it would be conducting no further investigation.

The plaintiff further reports "severe harrassing communication" and "illegal-telephone/ wiretap." She states that she has reported problems with her telephone to Bell South since August 2004. She claims that she has asked Bell South if her phone is tapped but contends that

4

Bell South claims that it cannot give her this information. She reports that she is not a drug dealer, murderer or psychopath, and that she is "100% sure that this wiretap is related to the corruption and cover-up." She contends, "[t]here is no reason for the FBI, Police or anyone to tap my line."

She lists specific incidents, since July 2004, which she believes proves that her phone is tapped. According to the Plaintiff,

> I have heard echos, clicks, and beeps and my line has at times been dead when I first pick it up. At times when I try to call out my telephone calls are rerouted and I am not reaching the offices that I am calling. I have had people on my line pretending to be the offices that I am calling and I recognize the same people's voices that are being used when my calls are rerouted. They have "cut off" my conversations with others and destroyed my fax machine. I also have several pages of Email that is returned undeliverable, particularly when I am trying to reach out of state media and out of state attorneys.

She claims that the telephone company has also heard these noises but cannot give her any information; rather, claims the plaintiff, the telephone company states, "if it is federal we cannot get involved."

The only occasion that any of the defendants are mentioned with respect to the phone examples was on November 24, 2004, the day before Thanksgiving, when the plaintiff claims,

> I was talking to the [Defendant] Mr. Hicks at the FBI. I asked to speak with Jeff Young, Mr. Hicks stated, "he's not here." I asked to speak with [Defendant] Brett Johnson, Mr. Hicks stated, "he's not here." I asked to speak with Mary Lou, Mr. Hicks stated, "she's not here." I asked to speak with whomever was in charge of that office, Mr. Hicks stated it was [Defendant] Mr. Garley.[2] I asked to speak with Mr. Garley, Mr. Hicks stated, "he's not here." I asked for Mr. Garley's voice mail and Mr. Hicks would not put me through. I then stated, "I am just going to call Washington." When I hung up and tried to dial Washington, the call

---

[2] In the caption of the complaint, the plaintiff lists "Steven Gurley, FBI Louisville, Ky." as a defendant. On page two of the complaint, she lists "Steven Gurley" as a defendant. No where in the complaint or its attachment does the plaintiff reference a Mr. Gurley. The Court thus presumes that the Mr. Garley referenced by plaintiff in the attachment to her complaint is the Mr. Gurley she lists as a defendant.

would not go through. I repeatedly tried to call Washington and the call would not go through.

The plaintiff reports mailing a certified letter to Bernie Ubben, with the security department of Bell South, and "requesting to know Who is tapping my phone, why they are tapping my phone, when it first started and which judge signed the court order." She also mailed a copy of the letter to Becky Dunn in Bell South's corporate office in Atlanta. She is still awaiting a response.

The plaintiff additionally reports contacting the Louisville Metro Police Department about the harassing communication but claims that the police department would not conduct an investigation. On January 7, 2005, she reportedly spoke with Lieutenant Linda Pettick in Chief White's Office, who stated that "they could not get involved if it is federal and that I would have to get an attorney to get them off of my telephone line."

The attached letter contains a heading entitled "Other Police Matters." Under that heading, the plaintiff reports that for about one to two months, "everytime I came out of my house and drove my car to go anywhere I would see a police car, therefore I also believe that my vehicle had an illegal tracking device on it. It did not matter what time a day or place."

Finally, the plaintiff reports that "Virginia Harrod is the prosecutor regarding Mark Yates and Will Beard who are on the tape talking about killing me and taking me to the KKK." The plaintiff claims that she has repeatedly asked that Virginia Harrod be replaced because Ms. Harrod has not pursued an investigation regarding the assault charge being changed to harassment/no physical contact, has not pursued an investigation into the tapes of the plaintiff's co-workers planning to kill her, and has asked for a bench trial when the plaintiff wanted a jury trial.

The plaintiff states, "there is a huge circle of cover-up/corruption that encompasses all of[] the above and other offices and I do 'Fear for my life.'" She reports that she has had extreme aching all over her body and is having some type of mild seizures since the black powder has been thrown on her. "In closing," writes the plaintiff, " when I asked the telephone company about the tap on my phone they state, 'they cannot get involved when it is federal.' When I asked the police to take reports regarding my telephone they state, 'What do you expect us to do we can't get involved when it is federal.'"

## II.  **LEGAL STANDARD**

Because the plaintiff is proceeding *in forma pauperis*, this Court must review the instant action.  28 U.S.C. § 1915(e)(2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604-05 (6th Cir. 1997).  Upon review, this Court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

A complaint may be dismissed as frivolous if it is premised on a nonexistent legal interest or delusional factual scenario.  *Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989).  A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  In reviewing a complaint under this standard, the Court must accept all factual allegations contained in the complaint as true and must also construe the pleading in the light most favorable to the plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

### III. ANALYSIS

#### A. Amendment XIV

At the outset, the Court notes that the plaintiff fails to specify whether she is claiming a due process and/or equal protection violation under the Fourteenth Amendment. Regardless, "the Fourteenth Amendment . . . applies only to the states." *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). As the plaintiff is suing *federal* defendants, the Fourteenth Amendment claim must be dismissed.

While the Fourteenth Amendment applies to the states, the Fifth Amendment applies to federal government action. *See generally Davis v. Passman*, 442 U.S. 228, 234 (1979) ("[T]he Due Process Clause of the Fifth Amendment forbids the Federal Government to deny equal protection of the laws."). Despite the Fifth Amendment's application to federal actors, that claim is without merit.

The plaintiff fails to articulate with any specificity a due process or equal protection violation by any defendant. To the extent she may be claiming that the defendants' failure to investigate her claims constitutes a due process or equal protection violation, there is no inherent constitutional right to have the FBI conduct an investigation, and the plaintiff has made no allegation that the failure to investigate by the FBI was on the basis of her race or other characteristic that would implicate any equal protection violation. *See*, *e.g.*, *Smith v. Ross*, 482 F.2d 33, 36-37 (6th Cir. 1973) (per curiam) ("[A] law enforcement officer can be liable under § 1983 when by his inaction he fails to perform a statutorily imposed duty to enforce the laws equally and fairly, and thereby denies equal protection to persons legitimately exercising rights guaranteed them under state or federal law."); *Burchett v. Self*, No. 94-5058, 1994 WL 276865,

at *2 (6th Cir. June 21, 1994) ("Because Burchett fails to claim that the FBI agent's alleged inaction was motivated by impermissible reasons, Burchett fails to assert a *Bivens* action against the FBI agent."). The plaintiff has not alleged that the FBI or its employees failed to enforce the laws equally and fairly. She merely contends that they failed to investigate. Consequently, any Fifth Amendment claim must also be dismissed.[3]

### B.  18 U.S.C. § 245

In her complaint, the plaintiff alleges a violation of 18 U.S.C. § 245. This is a criminal statute which does not give rise to any civil cause of action. *See*, *e.g.*, *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985) (finding no private cause of action under 18 U.S.C. § 245); *Pope v. Thornburgh*, No. 91-5219, 1992 WL 314014, at *1 (D.C. Cir. Sept. 23, 1992) (same); *Paulson v. Carter*, No. CV-04-1501-HU, 2005 WL 35856, at *8 (D. Or. Jan. 6, 2005) (same). Moreover, to the extent the plaintiff seeks the incarceration of the defendants, the authority to initiate a criminal complaint rests exclusively with state and federal prosecutors. *Sahagian v. Dickey*, 646 F. Supp. 1502, 1506 (W.D. Wis. 1986); *Kelly v. Rockefeller*, No. 02-3114, 2003 WL 21386338, at *2 (10th Cir. June 17, 2003) ("[Section] 245 explicitly reserves the right of prosecution to government officials."). Accordingly, any claim purportedly arising under 18 U.S.C. § 245 must be dismissed.

---

[3]Furthermore, to the extent the plaintiff is attempting to bring a *Bivens* action, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), such an action is not cognizable against federal agencies, such as the FBI sued by the plaintiff, *F.D.I.C. v. Meyer*, 510 U.S. 471, 485-86 (1994), and such an action cannot be maintained against federal officers sued in their official capacities. *Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 115-16 (1988).

### C. **Conspiracy to Intimidate and Harass a Witness/Victim of a Hate Crime**

In her form complaint, as one of the grounds for bringing this case in federal court, the plaintiff lists "Conspiracy To Intimidate [and] Harass a witness/victim of a Hate Crime." No where else in the complaint or its attachment does the plaintiff mention a conspiracy. In the attached letter to the complaint, she separately details incidents involving various business and governmental entities and divides the allegations into the following headings: Blue Grass Automotive, the "Equal Employment Opportunity Center," the County Attorney's Office, Federal Bureau of Investigation, "Severe Harrassing Communication, Illegal-Telephone/Wiretap," Louisville Metro Police, Other Police Matters, and Special Prosecutor. She then writes, "[i]n closing, in view of all the above, and other information that I have not submitted to you, there is huge circle of cover-up/corruption that encompasses all off the above and other offices and I do 'Fear for my life.'" She further writes, "the corruption in Louisville, Kentucky is 'Out of Control.'"

To the extent she may be seeking to bring a conspiracy claim under 42 U.S.C. § 1985, such a claim fails. Section 1985 contains three subsections. Section 1985(1) deals with conspiracies to interfere with the performance of official duties by federal officers, *Kush v. Rutledge*, 460 U.S. 719, 724 (1983), which she has not alleged. Section 1985(2) pertains to conspiracies to interfere with the administration of justice in federal and state courts. *Kush v. Rutledge*, 460 U.S. at 724. While she mentions having pending federal and state court actions, the plaintiff has not alleged any conspiracy on the part of the FBI and FBI employees to interfere with the administration of justice in those courts.

And finally, § 1985(3) applies to conspiracies that interfere with "the private enjoyment of 'equal protection of the laws' and 'equal privileges and immunities under the laws' [] and [those conspiracies that interfere with] the right to support candidates in federal elections." *Kush v. Rutledge*, 460 U.S. at 724; 42 U.S.C. § 1985(3). To prove a claim of conspiracy in violation of 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or the deprivation of any right or privilege of the United States. *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996), *cert. denied*, 520 U.S. 1267 (1997); *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994), *cert. denied*, 514 U.S. 1066 (1995). "[T]here must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Kush v. Rutledge*, 460 U.S. at 726 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

The plaintiff's complaint fails to allege that any of the defendants developed or were involved in a plan of conspiracy or acted in furtherance of any conspiracy. She only broadly claims a conspiracy. Moreover, while the plaintiff alleges a hate crime committed by others, she has not alleged any racial or other class-based invidiously discriminatory animus on the part of the named defendants in this action. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir.1984) ("[E]ven in its most liberal construction, plaintiff's complaint merely alleged broad conclusory negligence language void of

the factual allegations necessary to support a conspiracy theory."). The plaintiff's claim that there has been a conspiracy is wholly conclusory. As the plaintiff fails to plead with specificity a conspiracy involving the defendant FBI office and its employees, the conspiracy claim must be dismissed.

### D. False Claims and Illegal Wiretap

In the statement of claim portion of the form complaint, the plaintiff writes, "A False Claim has been made [and] the FBI Has Placed an Illegal Wire Tap on Ms Marshalls Tele." She fails to cite to a specific federal law which she believes has been violated with respect to these claims.

1. False Claim

As to the allegation that a false claim has been made, the plaintiff neither specifies who she contends made the false claim nor the content of the purportedly false claim. Her broad allegation is insufficient to set forth any claim against the defendants. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." And, the short and plain statement must "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The defendants here have not been given fair notice as to the plaintiff's "False Claim" action against them.[4] Thus, any false claim cause of action must be dismissed as frivolous.

---

[4] The Court notes that there is a False Claim Act, 31 U.S.C. § 3729-3733, but any claim asserted thereunder by the plaintiff given the facts alleged is patently frivolous. *United States ex rel. Augustine v. Century Health Servs., Inc.*, 289 F3d 409, 413 (6th Cir. 2002) ("The purpose of the False Claims Act is 'to provide for restitution to the government of money taken from it by fraud.'") (quoting *United States v. Hess*, 317 U.S. 537, 551 (1943)); *United*

2. <u>Illegal Wiretap</u>

With respect to her wiretap claim, the plaintiff may be attempting to assert a cause of action under the Federal Wiretap Act, 18 U.S.C. §§ 2510 *et seq*. That Act provides for a civil cause of action under § 2520. *Lanier v. Bryant*, 332 F.3d 999, 1003 (6th Cir. 2003) (citing 18 U.S.C. § 2520). Section 2520(a) provides, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate."

With respect to the individual capacity claims, the plaintiff wholly fails to allege or suggest that Defendants Hicks, Johnson, and Gurley were in any way personally involved in the purported wiretapping of her telephone. Therefore, the individual capacity claims under § 2520 against those three defendants must be dismissed.

On its face, however, § 2520 expressly bars relief against the United States. As the claims against the FBI and the official capacity claims against Defendant Hicks, Johnson, and Gurley are actually against the United States, the plaintiff has no cause of action against those defendants under § 2520 of the Federal Wiretap Act. *See Richard Lawson Excavating, Inc. v. N.L.R.B.*, 333 F. Supp. 2d 358, 360 (W.D. Pa. 2004) (indicating that a claim under § 2520 is foreclosed against the National Labor Relations Board); *Ellis v. Bazetta Police Dep't*, No. 4:05CV638, 2005 WL 1126731, at *2 (N.D. Ohio Apr. 26, 2005) (stating that an action against the FBI under § 2520 precluded).

---

*States ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032, 1035 (6th Cir. 1994) (explaining that under § 3730, "[a] *qui tam* plaintiff . . . may bring a private civil action on behalf of himself and on behalf of the United States government against a defendant who, in violation of 31 U.S.C. § 3729, has submitted a false claim to the government for payment.").

While § 2520 does not provide a cause of action against the United States, 18 U.S.C. § 2712 does. *See* 18 U.S.C. § 2712(d) ("Any action against the United States under this subsection shall be the exclusive remedy against the United States for any claims within the purview of this section."); *Richard Lawson Excavating, Inc. v. N.L.R.B.*, 333 F. Supp. 2d at 360; *Ellis v. Bazetta Police Dep't*, 2005 WL 1126731 at * 2. Section 2712(a) provides, "Any person who is aggrieved by any willful violation of this chapter . . . may commence an action in United States District Court against the United States to recover money damages." That statute, however, contains jurisdictional prerequisites to suit. Specifically, under § 2712(b),

> (1) Any action against the United States under this section may be commenced only after a claim is presented to the appropriate department or agency under the procedures of the Federal Tort Claims Act, as set forth in title 28, United States Code.
>
> (2) Any action against the United States under this section shall be forever barred unless it is presented in writing to the appropriate Federal agency within 2 years after such claim accrues or unless action is begun within 6 months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented. The claim shall accrue on the date upon which the claimant first has a reasonable opportunity to discover the violation.

As the plaintiff has not demonstrated that she has met the foregoing jurisdictional prerequisites to suit, the § 2712 claim will be dismissed without prejudice.

### E. Other Purported Violations

As to the plaintiff's remaining claims, she fails to allege them with sufficient specificity to survive initial review and/or fails to demonstrate their applicability to any of the facts alleged. For instance, she broadly claims, "violating Title VII, Title 18." A viable Title VII claim requires an employer-employee relationship, which she clearly does not have with the defendants named herein. Her Title 18 claim is too broad, and the Court has already considered

14

her more specific Title 18, Section 245 claim and further construed the wiretap claim as one arising under Title 18. She also alleges a violation of "FCC Rules," "Federal Waste of Taxpayers Money," "Other Federal Violations," and "Policies [and] Procedures of FBI Rules of Fed. Procedure."  She cites to no specific federal statute that has been violated, fails to allege how the defendants were involved, and fails to demonstrate that any of those claims constitutes any federal constitutional violation.  She merely makes broad and conclusory allegations that fail to place the defendants on notice as to the claims against them.  Consequently, the remaining claims must also be dismissed as frivolous.

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "the duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted); *see generally Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), and this Court is not required to create a claim for the plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To do so would require the "courts to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

As the plaintiff's allegations are legally frivolous, *Neitzke v. Williams*, 490 U.S. 319, 329-30; *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990), dismissal of the entire complaint is warranted.

The Court will enter a separate Order in conformity herewith.

Date:

cc: Plaintiff, *pro se*
  Defendants
  United States Attorney
4411.005